# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **LISA HADDON, ET AL.,** | ) | **CASE NO. 1:18CV2574** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **CITY OF CLEVELAND, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on the Motions for Summary Judgment of Defendant City of Cleveland (ECF. # 31) and Defendant Obon, Inc. (ECF # 30).  For the following reasons, the Court grants, in part, and denies, in part, the Motions.  .

## Factual Background and Procedural History

Plaintiffs Lisa Haddon, ("Haddon") titled owner of the subject property, Haddon's son Dominique King, her sister Pamela Haddon and ex-boyfriend Cy Rabb bring their Complaint against Defendants City of Cleveland and Obon, Inc. for the destruction of Lisa Haddon's house located at 156 E. 156th Street, Cleveland, Ohio, without notice, causing injury to Plaintiffs. Plaintiffs allege violations of their Due Process rights under the Fourteenth Amendment to the United States and Ohio Constitutions, Trespass, Negligence and Conversion under Ohio law and seek  Declaratory Judgment against Defendants.

According to their Complaint, Plaintiffs allege that on or about May 15, 2017, there was a fire at the subject property resulting in substantial damage to the structure and loss of personal

property of each Plaintiff.  Plaintiffs boxed their respective personal property, including clothes, shoes, furniture and other personal effects that were not destroyed in the fire for removal. Plaintiffs allege the personal property totaled approximately $70,000.

Plaintiffs contend that after the fire, the subject property was still sound, could be repaired with reasonable notice and did not require condemnation.  However, on June 27, 2017, the City of Cleveland ("The City") inspected the property and produced a Notice of Violation of Building and Housing Ordinances, finding the property was damaged and required Lisa Haddon to abate the damage within thirty days of the Notice.   The Notice instructed Haddon she could appeal within thirty days of the Notice.

On June 29, 2017, the City condemned the subject property and hired Defendant Obon, Inc. to demolish the home.  Obon proceeded to demolish the home on July 15, 2017, which was prior to the running of the thirty day appeal or abatement time.

Notice was only achieved on Haddon by certified mail on August 5, 2017, after demolition occurred and the appeal and abatement times had run.  As a result, Plaintiffs lost the value of their personal property and Haddon incurred costs for the demolition totaling approximately $10,000.00.

Plaintiffs originally filed their Complaint with the Cuyahoga County Court of Common Pleas on October 12, 2018.  Defendants removed the case to United States District Court on November 8, 2018, under the District Court's federal question jurisdiction and supplemental jurisdiction over related state law claims.  Pamela Haddon was subsequently dismissed without prejudice.

**City of Cleveland's Motion for Summary Judgment**

The City moves for Summary Judgment on all of Plaintiffs' claims, contending that Plaintiffs' Complaint fails to allege a *Monell* claim against the City, therefore, there can be no liability for a constitutional violation.  Furthermore, the City argues that Plaintiffs do not allege any unlawful policy, custom or practice of the City that resulted in a constitutional violation.

Even if Plaintiffs' had sufficiently pled a *Monell* claim, there is still no constitutional violation according to the City.  The City's Ordinances contain an emergency demolition provision which does not require Notice prior to demolition.  The City's Chief Building Official has the authority under C.C.O. § 3103.01(f) to make an emergency determination.  In such circumstances, the Ordinances provide for a post-deprivation hearing within thirty days of the demolition under C.C.O. § 3103.20(e).  Because Plaintiffs never availed themselves of the post-deprivation appeal process, Defendants contend that Plaintiffs cannot maintain an action for any alleged inadequacy of the post-deprivation procedure.

The City further alleges Plaintiffs cannot maintain their state law claims for unlawful Trespass, Conversion and Negligence because it is immune as a political subdivision pursuant to Ohio Revised Code § 2744.02 and no exception applies.

**Defendant Obon, Inc.'s Motion for Summary Judgment**

According to Obon, Haddon moved to California in May of 2014, during which time the sole occupants of the subject property were Haddon's daughter and Rabb.  In August 2015, Rabb moved to California.  Consequently, from August 2015 till the fire of May 2017, the property was uninhabited except for the three to four times per year Haddon returned to Cleveland.

Obon contends that in her deposition, Haddon admitted the habitability of the subject

property was suspect even prior to the fire with Haddon unable to verify that water, gas and electricity were working properly in March of 2017, two months before the fire.

Following the fire, Haddon had a personal contractor board up the home and contacted a damage repair company to provide an estimate of the costs to repair the property.  Haddon ultimately did not retain the company to perform the repairs and returned to California.   Haddon did nothing to secure the personal property in the home after the fire and made no provision for the receipt of mail which was now undeliverable due to the damage from the fire.

The City, through the Director of Building and Housing, has exclusive authority under the City's Ordinances to demolish vacant, abandoned, nuisance or damaged structures and emergency authority to expeditiously demolish structures determined to be an immediate hazard to the public.  In order to exercise its emergency demolition powers, the City must consider the structural integrity of the property, efforts to communicate with the property owner and determine whether the property is vacant or occupied.

Obon asserts that the City performed an inspection of the property in June of 2017 that found the flooring separating the first and second floors of the subject property was completely gone and that the property was an immediate risk to collapse.  Furthermore, the City inspection concluded the property was vacant or abandoned because the water had been shut off since January of 2017.   There had been no communication between the property owner and the City since the fire occurred.  In light of these facts, the City decided the subject property was an immediate risk to the public and decided to demolish the property under its emergency authority.

An expedited bidding process was engaged and Obon was contracted to demolish the property between July 7 and 13 of 2017.  Obon demolished the property on July 15, 2017.

4

Obon was subject to monetary fines and penalties if it did not act expeditiously to demolish the public hazard.  Obon admits it did not obtain a permit to demolish the property until after the demolition occurred but, due to the urgency involved in abating the public hazard presented by the condition of the property, it did not violate any laws because the City issued an emergency order to demolish the property immediately.

Despite several attempts to contact Haddon, the City was unsuccessful.   The City attempted to contact Haddon via old phone numbers from previous permits and tax info.  The only address they had for Haddon was the subject property.  When all other attempts failed they executed a search warrant.  Finally, the City issued formal notice to the address of the subject property.  Obon asserts Haddon testified to being aware of the condemnation notice through her sister who photographed and scanned the notice prior to demolition.  Haddon admits she never updated her tax mailing address with the City when she moved to California.

Obon agrees that a Notice of Violation of Building and Housing Ordinances was delivered to the subject property address on June 27, 2017, that gave Haddon thirty days to abate or appeal the condemnation or the property.  However, Obon asserts that just two days later, on June 29, 2017, an emergency demolition notice was issued to Haddon.  Under the City Ordinances, emergency situations are exempt from the thirty day appeal process.  In these circumstances, an aggrieved property owner may appeal post-demolition under the City Ordinances.  Haddon did not avail herself of this post-demolition appeal.

Obon moves for summary judgment on all of Plaintiffs' claims, contending Plaintiffs' Due Process claim fails because the City's inability to provide timely notice to Haddon was the result of Haddon failing to update her address such that the City was unable to contact her.

Moreover, Haddon admits to having received notification of the condemnation of her property via her sister Pamela, who photographed and scanned the formal notice.  It was this notice that prompted Haddon to visit the property post-fire with a contractor to determine the costs of repair.  Regardless, it is undisputed Haddon never availed herself of her post-demolition appellate rights.

Moreover, as a contractor for the City performing a governmental function, i.e. - abatement of a nuisance, Obon is entitled to statutory immunity under O.R.C. § 2744.02.  Plaintiffs do not allege Obon or any of its employees acted with malice or in bad faith.  Therefore, Obon asserts it is entitled to summary judgment on all of Plaintiffs' claims.

**Plaintiffs' Opposition**

According to Plaintiffs, Haddon and Rabb reside in California with Haddon moving to California in 2014 and Rabb moving sometime in 2015.  Haddon returned frequently to the subject property due in part to visit her ill mother.   Haddon, Rabb, King and Pamela Haddon all kept personal items boxed and stored at the subject property.

On May 15, 2017, a fire damaged the subject property, however, Plaintiffs assert that records from the Cleveland Fire Department demonstrate that the property was not a danger to the public.  In its report of the fire, the Cleveland Fire Department noted the attic was scorched and had soot and smoke damage.   In a checklist of the report next to the headings "Significant Damage" and "Extreme Damage" the Fire Department placed a "0".  The report further notes Haddon's California address.

Haddon walked through the fire damaged property sometime in June of 2017 and found the home in good condition and personal property stored there intact and undamaged.   Haddon

6

had an insurance policy and provided her insurer with a list of the personal items in the house.

The insurer performed an inspection of the house and provided Haddon with an estimate for its

repair.  An estimator for Puroclean, a home rehabilitation company, also inspected the home and

provided Haddon with an estimate of the costs to repair the property.  Both the insurer and

Puroclean estimates evidence the fact that the property could be repaired.  Neither indicated the

property was a public danger.

   Plaintiffs contend the City did nothing after the fire for a month until a Cleveland City

Councilmember employee inquired about two fire damaged properties, including the subject

property asking, "where are we with getting these two vacant and dangerous eyesores out of the

community." (Plaintiff's exhibit 28).  It was upon receipt of this inquiry of a Councilmember that

the City dispatched an inspector to determine the extent of the structural damage.  The next day a

judge issued a search warrant for the property.  The subsequent inspection resulted in the Notice

of Violation.  The Building Inspector recommended to the Director of the Department of

Building and Housing that the subject property be declared an emergency and the Director issued

his emergency demolition order on June 29, 2017.  Yet, the demolition did not occur until July

15, 2017.

   Plaintiffs argue the City did not make a reasonable effort to contact Haddon prior to

demolition since it is undisputed that the Cleveland Fire Department had her California address.

Plaintiffs further argue that the City's post-demolition Notice deprived Haddon of her Due

Process rights as it afforded her no opportunity to appeal before the demolition occurred.  Also,

Obon failed to obtain a permit to demolish the subject property until after it had performed the

demolition.

Plaintiffs dispute that their Complaint fails to sufficiently allege a constitutional claim against the City for a Due Process violation.  The allegations in their Complaint, according to Plaintiffs, clearly provide sufficient allegations and facts supporting those allegations to put Defendants on notice of a constitutional violation.  The Complaint alleges Defendants unlawfully demolished Haddon's home, destroying the personal property therein, without providing her Due Process.  This, despite the fact that the home was not in danger of collapse.  While Plaintiffs concede the Complaint never cites to 42 U.S.C. § 1983, Plaintiffs assert that this oversight is a mere technicality and that Courts must consider the sufficiency of the allegations and facts in support to determine whether a claim has been adequately alleged.  Plaintiffs argue their Complaint describes the nature of the claim, the constitutional right violated and the facts in support of their claim.

Likewise, Plaintiffs contend their Complaint plausibly asserts a *Monell* claim against the City.  Citing the United States Supreme Court in *Pembaur v. City of Cincinnati*, 475 U.S.  469 (1986), for the proposition that a single decision by municipal policymaker may be sufficient to impose liability on a municipality, Plaintiffs point the Court to the fact that the City's Director of Building and Housing ordered the demolition of Haddon's home.  As the maker of City policy on building code enforcement, Plaintiffs assert that this singular act by the Director may subject the City to liability for a constitutional violation.

Plaintiffs further argue that whether the property was a danger to the public, warranting emergency demolition, is a question of fact, particularly as in cases such as this, when the City waits for over a month to commence the actual demolition and when the fire department records show no serious structural damage from the fire.  The real motive for the demolition, according

8

to Plaintiffs, was political, as evidenced by the email from a City Councilmember which spurred the Director to act.

Neither may the City rely on the affirmative defense that Haddon failed to exhaust her post-demolition appeal rights because the City never pled the affirmative defense of failure to exhaust in its Answer.  Consequently, the City is barred from relying on an unpled affirmative defense at this late stage of the proceedings.

Even if the Court were to consider the defense, Defendants have the burden to show post-deprivation appeals could afford them adequate relief.  It cannot.  As several courts in Ohio have held, the City's Ordinances do not provide for monetary damages.  In the absence of the same, Defendants cannot show adequate relief is afforded Plaintiffs for post-demolition appeals.

Plaintiffs allege the City received $11,500 from Haddon for the costs of the demolition but paid Obon only $9000, wrongfully retaining the remainder.

Plaintiffs argue that under Ohio law, an independent contractor, working at the behest of a municipal division, is not immune from tort liability for any negligent or other tortious acts committed by the independent contractor.  Obon negligently failed to obtain a permit prior to demolition.  Therefore, it is not immune from Plaintiffs' Negligence, Trespass and Conversion claims.

For all these reasons, Plaintiffs ask the Court to deny summary judgment for Defendants.

## LAW AND ANALYSIS

### Standard of Review

Summary judgment shall be granted only if  "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed.R.Civ.P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *See* Fed.R.Civ.P. 56(c)(1)(A), (B).  A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require

10

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
*Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003)
(quoting *Anderson*, 477 U.S. at 251-52).

**Due Process Violation**

As an initial matter, Plaintiffs' Brief in Opposition is silent as to Defendant Obon's
liability for any violation of Plaintiffs' constitutional rights. Therefore, the Court finds
Plaintiffs' have abandoned their Due Process Violation claim against Obon and grants Summary
Judgment for Obon on Count I of Plaintiffs' Complaint as there are no genuine issues of fact and
Obon is entitled to summary judgment as a matter of law.

To be successful in a procedural due process claim, Plaintiff must show that she: 1) had
a life, liberty, or property interest protected by the Due Process Clause, 2) was deprived of the
protected interest and (3) the state 'did not afford her adequate procedural rights." *Daily Servs.,
LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014) (citing *Women's Med. Prof'l Corp. v.
Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). "Generally, the process that is due before the state
may deprive an owner of property includes notice to the owner prior to the deprivation and an
opportunity for a predeprivation hearing." *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th
Cir.1994). In cases concerning real property, "due process does not require that a property
owner receive actual notice before the government may take his property." *Jones v. Flowers*,
547 U.S. 220, 226 (2006). The Supreme Court has instead stated that due process only requires
that the government provide "notice reasonably calculated, under all the circumstances, to
apprise interested parties of the pendency of the action and afford them an opportunity to present
their objections." *Mullane v. Central Hanover Bank & Trust Co. et. al.*, 339 U.S. 306, 314

(1950).  If an official's actions deprive an individual of procedural due process but is "random and unauthorized," the doctrine developed in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), allows the state to avoid liability by providing adequate remedies after the deprivation occurs.  *Daily Servs.,* 756 F.3d at  901.  Usually, due process requires that a hearing is mandated before the deprivation of property or liberty occurs.  *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).  However, the Sixth Circuit has held, "the failure to provide a pre-deprivation hearing does not violate due process in situations where a government official reasonably believed that immediate action was necessary to eliminate an emergency situation and the government provided adequate post-deprivation process." *United Pet Supply, Inc. v. City of Chattanooga, Tenn.,* 768 F.3d 464, 485–86 (6th Cir. 2014) citing *Harris,* 20 F.3d at1403–05, (the demolition of a home without notice and a hearing did not violate due process where the building inspector believed that the home was "dangerously close" to falling onto the street and another home).  "Nevertheless, even when the defendants are acting pursuant to established procedures, if a predeprivation due process hearing is impossible or impracticable, or the necessity for quick action exists, a postdeprivation remedy may be adequate."  *Harris*, 20 F.3d at 1401 citing *Zinermon,* 455 U.S. at 436.

However, *Parratt* does not apply here where the decision to demolish without a pre-demolition hearing was pursuant to established state procedures and not due to the unauthorized or random act of an official.   The Supreme Court in *Parratt* distinguished those cases where "either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking,

12

can satisfy the requirements of procedural due process."  *Parratt,* 451 U.S. at 539.

Plaintiffs' Complaint alleges all Plaintiffs were deprived of their Fourteenth Amendment Due Process rights as they were not provided notice or a hearing before the City demolished the home and destroyed their personal property.

According to the City, Cleveland Codified Ordinances grant the Director of Building and Housing the authority to enforce the Ohio Building Code and to establish policies and procedures in furtherance thereof.  C.C.O. § 3103.09(j) authorizes the City to demolish any structure without prior notice that is deemed an immediate danger to human life or health and reads:

> Cases of Emergency.  In cases of emergency that, in the opinion of the Director, involve immediate danger to human life or health, the Director shall promptly cause the building, structure or a portion of those to be made safe or removed. For this purpose he or she may at once enter the structure or land on which it stands, or any abutting land or structure, with assistance and at the cost as he or she deems necessary. He or she may request the Director of Public Safety to enforce the orders he or she gives that are necessary to cause the building, structure or a portion of those to be made safe or removed.

The C.C.O. provide for post-deprivation hearings when an emergency demolition has occurred. See  C.C.O. § 3103.20.  Plaintiffs do not challenge the constitutionality of the C.C.O.

The City argues that Plaintiffs' Complaint fails to plead a *Monell* claim under 42 U.S.C. § 1983 as the Complaint never cites to 42 U.S.C. § 1983 and fails to mention any policy, custom or practice of the City that violated Plaintiffs' constitutional rights.

Plaintiffs counter that a single act of a municipality that violates a Plaintiffs' constitutional rights may trigger municipal liability.  The United States Supreme Court has held, a "plaintiff must identify a municipal 'policy' or 'custom' that caused the injury," in order to subject a municipality to liability for a constitutional violation under 42 U.S.C § 1983."  *Bd. of*

*Cty. Comm'rs of Bryan Cty., Okl. v. Brown,* 520 U.S. 397, 397(1997).  "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged."  *Id.* citing *Monell v. New York City Dept. Of Social Services,* 436 U.S. 658, 692 (1978).  "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Bd. of Cty. Comm'rs of Bryan Cty., Okl.* 520 U.S. at 397.  "Proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably.  Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains."  *Id.*

The Court holds that Plaintiffs' Complaint sufficiently states a cause of action under §1983 for a Due Process violation under the Fourteenth Amendment to the United States Constitution and the Ohio Constitution.  The Complaint specifically alleges their Fourteenth Amendment rights were violated when the City failed to provide the requisite notice and right to be heard before demolishing Haddon's home and, consequently, destroying the personal property therein.  On a summary judgment motion the Sixth Circuit has held, "the question is...whether a constitutional violation occurred."  *Spadafore v. Gardner,* 330 F.3d 849, 853 (6th Cir. 2003).  In *Spadafore,* the Sixth Circuit held plaintiff had sufficiently asserted a constitutional violation despite plaintiff's failure to specifically invoke § 1983.  The Court determined that on summary judgment the Court looks to the complaint and other materials offered by the parties and further determined that whether the pleadings are insufficient is "no longer the correct inquiry."

14

Because Plaintiffs' Complaint and Brief in Opposition have clearly asserted the right affected and the allegedly unlawful conduct by the City that caused the violation, the Court finds the Complaint alleges a constitutional violation despite the fact that Plaintiffs never expressly invoked § 1983.

Furthermore, under *Bryan Cty.,* the Plaintiffs have sufficiently asserted a § 1983 claim for a Procedural Due Process violation as the Complaint asserts the actions of the Director in ordering the demolition of Haddon's house, without proper prior notice or a hearing, subjects the City to potential liability.

Having found the Complaint has sufficiently asserted a § 1983 Due Process violation claim, the Court next considers whether the Director's decision to demolish the subject property was a proper exercise of his authority.  Plaintiffs argue that there was no danger of the subject property collapsing and therefore, there was no reason to invoke the Director's emergency authority to demolish without first giving notice and the opportunity to be heard predeprivation. The City conversely argues the condition of the property presented a danger to the public warranting immediate demolition.

In *Harris*, under facts similar to those presented here, the Court found a postdeprivation hearing satisfied plaintiff's procedural due process rights when the City of Akron demolished his home on an emergency basis.  The plaintiff in *Harris*, like Haddon, argued that the building was not an immediate danger to the public and provided an affidavit from a construction expert testifying so.   The Sixth Circuit held, "Regardless of whether the official's conclusion as to the existence of an emergency was correct or not, the unchallenged code section placed him in a position where there was "necessity of quick action. (Internal citation omitted).  Under these

circumstances, it was impracticable to wait for a predeprivation process to run its course.  The availability of a meaningful postdeprivation process 'by which to assess the propriety of the [city's] action at some time after the initial taking,' satisfied the requirements of procedural due process." *Id.* at 1404.  The Sixth Circuit in *Harris* was highly deferential to the determination of the Director that an emergency existed as the law afforded the Director discretion to make an emergency determination.  In *Harris*, the Sixth Circuit examined its precedent, including *Watts v. Burkhart,* 854, F.2d 839 (6th Cir. 1988), which held that "generally where a deprivation is caused by application of established state procedures, the existence of adequate postdeprivation procedures is irrelevant."  The Sixth Circuit discussed *Watts* in relation to *Parratt* and concluded, "Our *Watts* decision is not to the contrary, as it recognizes the emergency exception, stating there was no showing that it was essential for the authorities to take quick action." *Harris,* 20 F.3d  at 1404.  Thus, *Harris* requires that the state actor, acting to abate an emergency without a notice or hearing prior to a deprivation of a plaintiff's liberty or property interest must make some showing that the emergency action was essential.  However, the Sixth Circuit in *Harris* held that when a plaintiff fails to challenge the authority of the decision maker to determine if an emergency exists, "the question of whether an emergency actually existed constituted nothing more than a question of whether they made the right decision.  By attempting to show only that the defendants made the wrong decision, *Harris* in no sense attacked the constitutionality of the process by which that decision was reached." *Id.*

However, in *Harris,* the City of Akron learned about the dangerous condition of the house and then demolished it on the same day.  Here, Haddon's home was not demolished until two months after the fire and more than two weeks after the Director found it to be a public

16

danger.  In similar circumstances, a court in this district held that a twelve hour delay between learning of a potentially dangerous property and demolition was enough of a delay to distinguish it from *Harris* and created a genuine issue of fact whether the demolition without prior notice was an emergency.   See *Jaber v. City of Akron,* No. 1:15CV728, 2015 WL 9258617 (N.D. Ohio Dec.. 18, 2015).

Plaintiffs further contend an email from a City Councilmember prompted the decision to declare the property an immediate danger and not the condition of the house itself.
In an email dated June 13, 2017, nearly one month after the fire on the subject premises, Mary Louise Jesek Daley, Councilmanic Aide and Executive Assistant to Councilman Michael Polensek sent an email to Ayonna Donald and Angelo Calvillo, City of Cleveland employees, that reads:

> The Councilman was wondering where we were at with the following two addresses.  Both were damaged by Arson.  Both have inactive CPP accounts. The water still seems to be "on" at Hiller and is off at East 156 Street.
> We need to know if the investigation into both of these fires has yielded anything and if they are still ongoing.  If the arson investigations are finished at the properties-what is the status per B & H then?  If they are forthwith because of the level of damage then where are we with getting these two vacant and dangerous eyesores out of the community?

(Ecf 3 33-28).

Given these facts, the Court finds this situation distinguishable from that in *Harris*.   First is the question whether this was, in fact, an emergency given the lengthy delay between the fire and the demolition of almost two months.  Moreover,  the two week delay from the City's determination that the property presented an emergent danger and therefore, need to be demolished, presents a jury question whether there was an actual emergency necessitating demolition without notice and a hearing.  In a more recent case, the Sixth Circuit allowed a case

17

to proceed for a due process violation claim when a plaintiff produced evidence that there was no emergency warranting the denial of predeprivation notice and hearing.  "DiLuzio has produced admissible evidence to support his theory that Mayor DiFilippo acted in bad faith, that there was actually no emergency condition or necessity for quick action, and that nothing prevented the Village (or DiFilippo) from providing pre-deprivation process.  Consequently, *Parratt* and *Harris* do not apply in this case.  Simply put, officials cannot deny citizens due process by falsely invoking an emergency need for quick action."  *DiLuzio v. Vill. of Yorkville, Ohio,* 796 F.3d 604, 614 (6th Cir. 2015) citing *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 418 (3d Cir.2008).  Here, Plaintiffs have produced evidence that the house was not a danger.  Moreover, a jury could find that the City's dilatory actions in declaring the property a danger and further delaying the demolition after the declaration, are sufficient to show the subject property was not an immediate danger.  Finally, that the City appeared to act after some political pressure presents a pretext issue for a jury to consider.

Second, the City claims it tried, but could not give Plaintiff predeprivation notice because it did not have her California address, yet the fire department report clearly shows Haddon's California address.  The Court finds this creates an issue of fact for the jury to determine whether the City could have provided Haddon with notice prior to the demolition.

Lastly, courts have found the City's post-deprivation process does not provide adequate remedies as it does not provide for the payment of compensatory damages.  In fact, in *Harris*, the Sixth Circuit held that plaintiff had an adequate post-deprivation process in an inverse condemnation action.  But subsequently, the Sixth Circuit has held that Ohio does not provide such a remedy.  See *McNamara v. City of Rittman,* 473 F.3d 633, 638 (6th Cir. 2007).  ("Ohio

18

does not have an inverse condemnation or other direct, statutory cause of action for plaintiffs

seeking just compensation for a taking.").

       Furthermore, there appears to be a vigorous debate in Ohio courts whether the C.C.O.

and Ohio law provides adequate postdeprivation remedies.  Nothing in the City's Ordinances

authorizes the Board to grant monetary relief and the City does not argue, nor did the court find,

that the Board had the ability to grant monetary relief. See *AMM Peric Property Invest., Inc. V.*

*City of Cleveland,*  2014 WL 888424, 2014-Ohio-821, ¶ 16.  But as the dissent stated in AMM, a

Plaintiff could establish in a postdeprivation hearing that the City acted in violation of his or her

due process rights.  Such a showing would necessarily result in the City's actions constituting an

unlawful taking, which the plaintiff could then file a Writ under Ohio law for recompense. See

also generally *Collins v. City of Cleveland,*  N.D.Ohio No. 1:11CV221, 2012 WL 5304092 (Oct.

24, 2012); *Babandi v. Allstate Indemn. Ins. Co.*, N.D. Ohio No. 1:07CV329, 2008 U.S. Dist.

LEXIS 27222, *13–14, 2008 WL 906116 (Mar. 31, 2008).  Under Ohio law "parties need not

pursue their administrative remedies if doing so would be futile or a vain act." *State ex rel.*

*Teamsters Local Union 436 v. Cuyahoga Cty. Bd. of Commrs.,* 132 Ohio St.3d 47 (2012).

       For these reasons, the Court finds genuine issues of fact preclude summary judgment for

Defendant City on Plaintiffs' Procedural Due Process claim.

## **State Law Claims**

       The City contends it is entitled to summary judgment on Plaintiffs' state law claims as

they are immune under O.R.C. § 2744.  Plaintiffs' Brief in Opposition contains no defenses or

discussion  in opposition to the City's arguments.  Therefore, the Court finds Plaintiffs have

abandoned their state law tort claims against the City and grants summary judgment for the City

on Plaintiffs' state law claims. [1]

Obon contends it is immune from liability on Plaintiffs' state law claims as its actions were the result of a performance of a governmental function under O.R.C. § 2744.02(A)(1). "Determining whether a political subdivision is immune from liability under R.C. 2744.02, as this court has frequently stated, involves a three-tiered analysis." *Lambert v. Clancy,* 125 Ohio St. 3d 231, 233 (2010) citing *Elston v. Howland Local Schools,* 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 10; *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556, 733 N.E.2d 1141.   Under the first tier, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1).

"The second tier in the immunity analysis focuses on the five exceptions to this immunity, which are listed in R.C. 2744.02(B)." *Lambert*, 125 Ohio St. 3d at 233, citing *Elston,* 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 11.  "If any of the exceptions to immunity are applicable, thereby exposing the political subdivision to liability, the third tier of the analysis assesses whether any of the defenses to liability contained in R.C. 2744.03 apply to reinstate immunity." *Lambert*, 1256 Ohio St.3d at 233 citing *Elston,* 113 Ohio St.3d at 12.

"There is no dispute that the City is a political subdivision under the statute.  There is

---

[1]     There is no statutory immunity for claims arising out of alleged constitutional violations.  See 2744.09.  "This chapter does not apply to, and shall not be construed to apply to, the following: (E) Civil claims based upon alleged violations of the constitution or statutes of the United States..."

also no serious dispute that the demolition of a condemned structure that has been declared a nuisance is a governmental, as opposed to a proprietary, function." *Leath v. Cleveland,* 2016-Ohio-105, ¶ 22.  "Actions in tort that have come to be termed a claim for "wrongful demolition" generally are barred by political subdivision immunity." *Leath v. Cleveland,* 2016-Ohio-105, ¶ 25 *citing Englewood v. Turner,* 178 Ohio App.3d 179, 2008–Ohio–4637, 897 N.E.2d 213, ¶ 22 (2d Dist.).

 Ohio law provides that the civil immunities provided political subdivisions under § 2744 also apply to private actors acting as agents of a political subdivision in order to carry out a governmental function.  "'R.C. 2744 creates immunity for [the City] from liability for injury or losses incurred by the exercise of its governmental function.  [The] * * * stated cause of action arose out of the City's performance of its governmental functions: to wit: enforcement of the City Building Codes regarding the abatement of an alleged nuisance caused by a building or structure which was injurious to or menace to the public health, safety or welfare.'  Likewise, in this case, Precision, as an agent of the City, is immune from liability for losses incurred by the exercise of the City's governmental function in demolishing Ayers's condemned property." *Ayers v. Precision Envtl. Co.,* 2010-Ohio-4479, ¶ 20 quoting  *City of Cleveland v. Wescon Const. Corp.,* No. 57405, 1990 WL 121301, at *1 (Ohio Ct. App. Aug. 23, 1990).

However, here the parties dispute whether Obon was an independent contractor working for the City or was an agent/employee of the City.  § 2744.01 defines "employee" as "an officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision.  "Employee" does not include an independent

21

contractor..."  Because the statutory immunity under § 2744 is afforded only to political

subdivisions or their employees and does not cover independent contractors, the Court finds

issues of fact preclude summary judgment for Obon on Plaintiffs' state law tort claims.  In *Leath*,

an Ohio Court of Appeals reversed the dismissal of a private company under § 2744 when the

parties disputed whether Defendant was an independent contractor or agent, holding:

> ABC Construction was acting as an agent of the City at the time of the alleged
> trespass and negligence. However, the trial court found that ABC Construction
> and Martin Fano were not liable based on political subdivision immunity. That
> holding was in error. R.C. 2744.02(A) applies only to a political subdivision and
> its employees. There is at least a material dispute about ABC Construction's status
> as an employee or independent contractor. It is not obvious from the face of the
> complaint that Leath cannot recover under any set of facts. While ABC
> Construction may be entitled to summary judgment because it acted at the behest
> of the City, immunity may not attach to independent contractors and the
> complaint is not otherwise frivolous.

*Leath v. Cleveland*, 2016-Ohio-105, ¶ 27.

Moreover, in the cases cited by Obon for the proposition that "Courts  regularly  find

that  an  entity  or  corporation  is  an  "instrumentality"  of  a  political  subdivision,  falling

within governmental immunity's protection from tort claims."  (Obon Opposition brief pg. 14)

including *Wilson  v.  Stark  Cty.  Dept.  of  Human  Svs.*,70 Ohio St.3d 450, 453, 639 N.E.2d

105  (1994); *Miller Plumbing & Heating Co. v. Village of Chagrin Falls,* 8th Dist. Cuyahoga

No. 73592, 1998 Ohio  App.  LEXIS  5902,  at  *19-20  (Dec.  10,  1998), the Court finds them

distinguishable and do not support immunity for Obon.   In *Wilson*, the issue was whether a

county department was a political subdivision.  The Ohio Supreme Court found that a county

department was indistinguishable from the county itself and was immune under § 2744.

In *Miller Plumbing*, the Village of Chagrin Falls appointed the representative of a private

company to be its Village Engineer, a position expressly provided for by state statute.  Here, Defendants do not contend that Obon was appointed to a statutory employment position of a political  subdivision.  Therefore, the Court finds there is a genuine dispute of fact whether Obon was acting as an employee of the City as defined by § 2744, or an independent contractor. "Whether someone is an employee or an independent contractor is ordinarily an issue to be decided by the trier of fact." *Bostic v. Connor*, 37 Ohio St.3d 144, 524 N.E.2d 881 (1988),

Therefore, for the foregoing reasons, the Court denies the City's Motion for Summary Judgment on Plaintiffs' Due Process claims, but grants summary judgment for the City on Plaintiffs' state law tort claims.   The Court grants summary judgment for Obon on Plaintiffs' Due Process claims but denies summary judgment for Obon on Plaintiffs state law tort claims.

IT IS SO ORDERED.


Date: August 25, 2020          /s/Christopher A. Boyko
                               CHRISTOPHER A. BOYKO
                               Senior United States District Judge