UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LISA HADDON, ET AL., | ) | CASE NO.1:18CV2574 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF CLEVELAND, ET AL., | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter is before the Court on the Motions for Summary Judgment of Defendants City of Cleveland and Obon, Inc. For the following reasons, the Court grants Defendants' Motions and grants judgment in Defendants' favor on all Plaintiffs' claims.

**Background Facts**

Plaintiffs Lisa Haddon, ("Haddon") titled owner of the subject property, Haddon's son Dominique King, her sister Pamela Haddon and ex-boyfriend Cy Rabb, bring their Complaint against Defendants City of Cleveland and Obon, Inc. for the destruction of Lisa Haddon's house, located at 156 E. 156th Street, Cleveland, Ohio, without adequate notice. The destruction of Haddon's house also destroyed Plaintiffs' personal property which was located inside the destroyed house causing injury to Plaintiffs. Plaintiffs allege violations of their Due Process rights under the Fourteenth Amendment to the United States and Ohio Constitutions, Trespass, Negligence and Conversion under Ohio law and seek Declaratory Judgment against Defendants.

According to their Complaint, Plaintiffs allege that on or about May 15, 2017, there was a fire at the subject property, resulting in substantial damage to the structure and loss of personal

1

property of each Plaintiff.  Plaintiffs boxed their respective personal property, including clothes, shoes, furniture and other personal effects that were not destroyed in the fire for removal.  Plaintiffs allege the personal property totaled approximately $70,000.

Plaintiffs contend that after the fire, the subject property was still sound, could be repaired with reasonable notice and did not require condemnation.  However, shortly after the fire, the City of Cleveland conducted an exterior inspection, made several attempts to contact Haddon and finally posted a notice of condemnation on the property door.  The City now acknowledges it cannot locate the original Notice, however, there is no factual dispute a Notice was posted to the house.  Haddon testified that her sister sent her photographs of the Notice but there is no clear indication of when that happened.  After failing to contact Haddon after multiple attempts, the City of Cleveland obtained a search warrant to enter the premises for an interior inspection which occurred on June 26, 2017.  On June 27, 2017, the City of Cleveland ("The City") issued a Notice of Violation of Building and Housing Ordinances (Condemnation Notice), finding the property was damaged and requiring Haddon to abate the damage that same day or the property would be demolished.  This second Notice instructed Haddon she could appeal within thirty days of the Notice.

On June 29, 2017, the City condemned the subject property and hired Defendant Obon, Inc. to demolish the home.  Obon proceeded to demolish the home on July 15, 2017, which was prior to the running of the thirty-day appeal time.  The Condemnation Notice sent by certified mail on June 30, 2017, to the property address informed Haddon she had the right to appeal the decision within thirty days of the issuance of the condemnation notice.  Moreover, it was also sent by certified mail on July 20, 2017, to Haddon's California address.

Notice was only perfected on Haddon by certified mail on August 5, 2017, after demolition occurred and the appeal and abatement times had run. As a result, Plaintiffs lost the value of their personal property and Haddon incurred costs for the demolition totaling approximately $10,000.00.

Previously, the Court granted in part Defendants' summary judgment motions, finding that the pre-deprivation Notice provided Haddon was sufficient to satisfy her procedural due process rights as she admitted her sister had photographed the Notice on the property and had sent it to Haddon in California. Moreover, Sixth Circuit caselaw held that Notice on the property was adequate if the City made other reasonable attempts to contact the homeowner. The Court granted summary judgment to the City of Cleveland on Plaintiffs' state law claims as well. The Court also granted summary judgment for Defendant Obon on Plaintiffs' Due Process claims but denied summary judgment for Obon on Plaintiffs' state law claims. But that holding was not dispositive of all Plaintiffs' claims. There were factual disputes surrounding whether the property was a danger to the public after the fire such that it needed to be destroyed on an emergency basis. Moreover, there was caselaw that held the City of Cleveland's Codified Ordinances did not provide adequate post-deprivation remedies. The Court reserved final ruling and instructed the parties to address three issues the Court believed were critical in determining liability. These questions were:

1) Does the City of Cleveland's Codified Ordinances provide adequate post-deprivation remedies under the United States Constitution?

2) Does the Due Process Clause of the United States Constitution require that the City of Cleveland provide post-deprivation remedies or is Due Process satisfied so long as there is a post-deprivation remedy available to Plaintiff through state law or state courts?

3) Despite a search of the record, the Court is unable to locate the Notice posted to Haddon's house according to the City, on May 17, 2017 and scanned by Haddon's sister prior to demolition. Therefore, the Court orders the City to point to its location in the record or provide an authenticated copy of the Notice prior to the hearing.

The Court held oral arguments on these questions then instructed the parties to submit post-hearing briefs on these questions. Those briefs have now been filed and the issues are now ripe for ruling.

## Does the City of Cleveland's Codified Ordinances Provide Adequate Post-Deprivation Remedies Under the United States Constitution?

In response to the first question, Plaintiffs argue that the City of Cleveland's Codified Ordinances do not provide a meaningful remedy to address losses of Plaintiffs and are therefore, inadequate as a matter of law in failing to provide constitutionally sufficient due process.

According to Plaintiffs, Cleveland's Codified Ordinances do not provide monetary compensation. Thus, the City's Ordinances do not provide an adequate remedy. In addition, the City's Notice process fails to provide Notice to personal property owners but is instead strictly limited to homeowners. Also, Haddon's home was demolished fourteen days before her thirty-day appeal time had run. The Notice at the house did not inform Haddon she could seek post-demolition relief. It failed to provide a meaningful remedy to Haddon, failed to provide Notice to Rabb and King and therefore, failed to provide adequate Due Process.

Defendant City of Cleveland argues that its Codified Ordinances provide an adequate post-deprivation remedy. According to the City, its Codified Ordinances allow any aggrieved individual to file an administrative appeal. The filing of an appeal would have stayed the demolition. In the alternative, Plaintiffs could have requested an injunction from a state court.

4

This process was available to Haddon but she failed to take advantage of it. Due process requires no more than what the Codified Ordinances and state remedies allow. Moreover, simply because the Codified Ordinances do not provide monetary relief does not mean the process offered is inadequate.

After the parties submitted their post-hearing briefs, the Sixth Circuit issued an Opinion on this issue. In *Patel v. Glen*, No. 21-3499, 2022 WL 16647974, (6th Cir. November 3, 2022), the Sixth Circuit considered a district court's denial of plaintiffs' motion for a preliminary injunction. At issue was a motel owned by plaintiffs that was found to be a public nuisance by a municipality. The city found the motel constituted a dangerous condition and ordered it to be vacated. Plaintiffs sued in federal court and moved for preliminary injunction, alleging in part that the city did not provide plaintiffs procedural due process before finding the motel a dangerous condition. The district court denied the preliminary injunction motion and on appeal the Sixth Circuit affirmed the denial.

In affirming the district court, the Sixth Circuit relied in part on the factual finding of the district court that the motel was unfit for public occupancy. This decision was based on the city's definition of a public nuisance found in its codified ordinances and was supported by photographs of the motel and an inspection. The Sixth Circuit and district court were not convinced by the mere conclusory representations by plaintiffs that the motel could be rendered safe while repairs were enacted, holding these representations did not refute or call into question the fact that the motel was not safe for human occupation at the time it was declared a public nuisance.

In the facts before the Court, there is only a personal property interest at issue, so according to Supreme Court precedent, postponement of judicial inquiry is not in and of itself a

5

denial of procedural due process. In *Glen*, plaintiff motel owners made several of the same arguments Plaintiffs make in this case. First, they argued that there was no true emergency because the city waited nearly a month before declaring the property a public nuisance. But the district court and Sixth Circuit both held that the uncontroverted evidence demonstrated there was a danger to the public. However, the Sixth Circuit in *Glen* acknowledged that the emergency exception does not apply when an official falsely invokes the emergency exception or when no true emergency condition exists. See *DiLuzio v. Village of Yorkville*, 796 F.3d 604, 614 (6th Cir. 2015).

Second, the Sixth Circuit in *Glen* also determined that lack of monetary damages in the codified ordinances' post-deprivation appeal does not render the post-deprivation process inadequate. Plaintiffs could have followed up the appeal with an action at law. 2022 WL 16647974 *6. So long as the post-deprivation process allows for a hearing and an appeal, which the City of Cleveland's Codified Ordinances provide, due process is satisfied. Id. Therefore, the Sixth Circuit held the post-deprivation process satisfies procedural due process under the U.S. Constitution.

As previously outlined, the City of Cleveland's Codified Ordinances expressly authorize the City to demolish an unsafe property without prior notice in an emergency situation. See C.C.O. § 3103.09j. "Cases of Emergency. In cases of emergency that, in the opinion of the Director, involve immediate danger to human life or health, the Director shall promptly cause the building, structure or a portion of those to be made safe or removed." See also O.R.C. § 715.26. A post-deprivation appeal is provided under C.C.O. § 3103.20(e). And as the Sixth Circuit in *Glen* held, Ohio state law provides adequate post-deprivation remedies. These include an administrative appeal to the state court challenging the decision of a housing board. See

6

O.R.C. § 2506 et seq.  Although the state court on an administrative appeal lacks the authority to award monetary relief, see O.R.C. § 2506.01, Plaintiff could bring a state court action for monetary damages including a takings claim under the Ohio Constitution.  Most importantly, the appeal is not limited to the homeowner but may be made "by any aggrieved person."  C.C.O. 3103.20e(1).  This broad language would appear to encompass the personal property claims of Plaintiffs who had no ownership interest in the real property.

Moreover, requiring the City to attempt to determine who had personal property in a condemned home which presents and immediate danger to the public and then attempt to provide those individuals with Notice is simply too burdensome to a municipality and almost certainly impossible in practice. It is the opinion of this Court that Notice to the homeowner is all the process due to those who have personal property in a condemned residence.

Plaintiffs could have availed themselves of the post-deprivation appeal and an action at law but failed to do so.  Therefore, the Court finds that the City of Cleveland's Codified Ordinances in combination with Ohio law provide adequate due process under the United States Constitution.

**Does the Due Process Clause of the United States Constitution Require that the City of Cleveland Provide Post-Deprivation Remedies or is Due Process Satisfied so Long as There is a Post-Deprivation Remedy Available to Plaintiff through State law or State Courts?**

Plaintiffs claim that the law of the State of Ohio also fails to provide due process. Plaintiffs acknowledge that due process requires the aggrieved have an opportunity to be heard at a meaningful time in a meaningful manner.  Yet, Plaintiffs contend none of the state court decisions discussing this issue found the state law provided due process.

7

Nor would a mandamus action satisfy due process as the Codified Ordinances do not allow Defendant to provide compensation even if so ordered by a superior court. Even if an appropriation were ordered, it only provides for loss of real property not personal property. Thus, Rabb and King would be without recompense. In fact, Plaintiffs contend the Ohio Supreme Court has determined that a jury cannot award personal property damages in appropriations proceedings. Here, Plaintiffs do not seek compensation for real property but rather personal property for which there is no remedy under the Codified Ordinances or Ohio state law.

Cleveland argues that Cleveland's Codified Ordinances are not required to provide complete postdeprivation remedies because Ohio law provides these remedies. State law relief is not inadequate even if it does not afford complete relief. Other courts have found that so long as state law allows an opportunity to be heard after the deprivation occurred due process is satisfied. While a court of appeals in an unpublished case in Ohio found contrary to this conclusion on Ohio law, (albeit with a strong dissent) Ohio due process and federal due process are analogous. See *Lifestyle Cmtys. v. City of Worthington, Ohio*, 2:22-cv-1775, 8 n.4 (S.D. Ohio Mar. 15, 2023). ("Lifestyle brings its due process claims under the Due Process Clause as applied to states through the Fourteenth Amendment to the United States Constitution and under Article I, Section 16 of the Ohio Constitution. The Ohio Supreme Court treats such claims brought under the Ohio Constitution as equivalent to their federal counterpart.") See also *State v. Aalim,* 2017-Ohio-2956, ¶ 15, 150 Ohio St.3d 489, 494, 83 N.E.3d 883, 890.

"Neither the Due Process Clause of the Fourteenth Amendment to the United States Constitution nor the analogous clause in Ohio's Constitution, Section 16, Article I, requires a hearing in this case." *Doe v. Dann,* No. 1:08 CV 220, 2008 WL 2390778, at *8 (N.D. Ohio June

9, 2008). "Although the concept is flexible, at its core, procedural due process under both the Ohio and United States Constitutions requires, at a minimum, an opportunity to be heard when the state seeks to infringe a protected liberty or property right." *State v. Cowan,* 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, ¶ 8. "[T]he opportunity to be heard must occur at a meaningful time and in a meaningful manner." *Id.* The federal and state constitutional provisions are treated as equivalent in the protections they afford. *Stolz v. J. & B Steel Erectors, Inc.,* 155 Ohio St.3d 567, 2018-Ohio-5088, *State v Guyton,.* 2022-Ohio-2962, ¶ 29, appeal allowed, 2022-Ohio-3752, ¶ 29, 168 Ohio St. 3d 1418, 196 N.E.3d 850. Thus, because the Codified Ordinances of the City of Cleveland and state law provide adequate remedies, Plaintiff was not denied due process under the Ohio Constitution.

In response to the Court's instruction to the City of Cleveland to point to the Notice provided Haddon shortly after the fire, but before the property was condemned, the City of Cleveland acknowledges it is unable to locate the original Notice provided Haddon and placed on the house prior to the inspection, condemnation decision and demolition of her house.

Having addressed the questions posed by the Court and now having addressed all issues to be determined, the Court finds the intervening decision in *Glen* requires the Court to revisit its original summary judgment ruling that issues of fact existed on the reasonableness of the decision that an emergency existed. That decision was based on the Court's concerns that the delay in destroying the house, the question of whether there was a political motive driving the decision to demolish and Haddon's own evidence that the house could be repaired, created an issue of fact for the jury. However, in light of *Glen* and further examination of the evidence, the Court is compelled to find for Defendants.

The Sixth Circuit has held, "When the government reasonably determines there is an emergency, post-deprivation procedures will generally satisfy procedural due process requirements." *Patel v. Glenn*, No. 21-3499, 2022 WL 16647974, at *5 (6th Cir. Nov. 3, 2022) See, e.g., *Harris v. City of Akron*, 20 F.3d 1396 (6th Cir. 1994) (finding that *Parratt* applied when a city government demolished a building because it believed there was an emergency related to the building's existence). "Likewise, a home that is declared to be a nuisance, unsafe for human occupancy, and in violation of code can be vacated immediately, without pre-deprivation proceedings."  *Glen* at *6 citing *Mitchell v. City of Cleveland,* 172 F.3d 49, *1, *3 (6th Cir. 1998) (unpublished table opinion).

The Sixth Circuit in *Mitchell* found that the motivations of the state actors are irrelevant when a court considers whether it was a reasonable determination that an emergency condition existed.  *Mitchell,* 172 F3d at *3.  This undercuts the Court's original finding that the alleged political motivations may have played a role in the determination that an emergency existed.

Also, in *Glen* the Sixth Circuit held that a delay in demolishing a condemned building does not negate the existence of an emergency but instead may be evidence of a due process violation only when no true emergency existed or the official falsely invokes the need for emergency action.  *Glen* at *6.  Consequently, the remaining issue now is whether the house was in such a condition that emergency action was required.  In *Glen*, the Sixth Circuit held that the district did not abuse its discretion when it found, in ruling on a motion for preliminary injunction, that plaintiff's business was a public nuisance and constituted an immediate danger to the public despite plaintiff's assertion that the business was not a danger to the public.  *Id.*  The Sixth Circuit found that the plaintiff's failure to contest the deteriorating concrete and other defects on the property resulted in the district court's finding that the zoning official's conclusion

10

that the motel's condition was a public hazard was "logical". As a result, the Sixth Circuit affirmed the district court's finding that plaintiffs failed to establish their business was safe for human occupation.

Here again, *Glen* is instructive. The Court had previously relied in part upon Haddon's representation that the house could be repaired as demonstrated by the itemized repair estimate provided by an independent company and submitted by Haddon. However, the Sixth Circuit in *Glen* rejected such evidence that a property could be rendered safe or that repairs could restore the property but held that such arguments do nothing to defeat the logical conclusion based on the evidence that a property is unsafe at the time the Notice was sent. *Id* at *4.

The uncontroverted evidence is that the property was vacant and had no water for six months prior to the fire. The City of Cleveland's legislative findings determined these conditions alone present a danger to the public as codified in C.C.O. 3103.09. The City of Cleveland made several legislative findings, including the following:

11(a)  Legislative Findings. Council of the City of Cleveland finds that:

(1) Structures that are vacant and open to entry at doors, windows or other points accessible to the general public:
   A.  Attract children to enter;
   B.  Become harborage for vermin;
   C.  Serve as temporary abode for derelicts, vagrants and criminals; and
   D.  Are likely to be damaged by vandals or set ablaze by arsonists.
...
(3) Thousands of structures in this City are made of wood-frame construction that is more combustible than other building types;
(4)
(5) Thousands of structures in this City are situated on narrow lots and in close proximity to one another, increasing the risk of conflagration and spread of insect and rodent infestation;
...
(6) Vacant, open structures often become dilapidated because they are not repaired by the owners or persons in control of the structures;
...

11

(8) Vacant and unsafe structures in which utility services have not been shut-off create a serious risk of explosion, accidental fire and flood.

(9) The existence of certain hazardous conditions may require a structure to be vacated; these conditions include but are not limited to:
    A. Danger of structural collapse;
    B. Inadequate heat or use of dangerous heating mechanism;
    C. Danger of fire; and
    D. Lack of plumbing in safe working order.

(10) Structures that remain boarded for an extended period of time contribute to blight, cause a decrease in neighboring property values, create targets for arson, and lead to the cancellation of homeowners' insurance for neighboring property owners.

These legislative findings were borne out in the fact that Haddon's house was subsequently set afire by vandals on May 15, 2017.  The Fire Report noted there were several holes, some very large, throughout the structure caused by the fire.  (ECF #33-25).  The Fire Report noted the structure was a wood framed structure and was vacant. Id.  The fire extended through the first and second floors and into the attic.  Id. The Report indicated there was no extreme nor significant damage.  Id.

The next day a Fire Investigation Report was issued noting the property was vacant for two years, the investigator was unable to access the second floor due to the damage, and that the fire was intentionally set on the second floor.  (ECF # 33-25 pg. 4).  A burn hole that was three feet by six feet was found on the first floor bedroom and the ceiling was charred with a "very large hole in the ceiling."  Id.  Another large burn hole was found in the third floor. Id.

Due to the City of Cleveland's inability to contact Haddon because she moved to California, the City performed an exterior inspection on May 19, 2017, finding numerous code violations, including fire damage, missing windows and boarded doors.  (ECF 31-7).  The inspector found that, based on the exterior inspection, the interior was likely to be, or become, "hazardous to public health and safety, or welfare."  Id.

12

The City of Cleveland then obtained a search warrant and conducted an interior inspection on June 26, 2017.  This inspection discovered the second floor had collapsed and there was extensive fire damage to the walls and ceilings.  Due to this structural collapse the property was condemned and ordered demolished on June 29, 2017.  Moreover, the June 27, 2017 Notice instructed Haddon she had one day to abate the property or it would be destroyed.  This Notice was also mailed to Haddon at her last known address in Cleveland and was posted to the condemned property.

The photographs accompanying the City of Cleveland's Motion demonstrate the extent of the fire damage, including a large gaping hole in the upper facade of the house and the substantial collapse of the second story floor.  That the house was severely damaged from the fire is beyond dispute and entirely unlivable in the state it was at the time of the interior inspection

Thomas Vanover, Chief Building Official and Commissioner of Code enforcement for the City of Cleveland made the emergency determination based on the fact that the second-floor collapse presented an immediate danger of total collapse because the way the house was built, the "second floor membrane is imperative to sustaining the structure."  Vanover depo. Pg 16).  Vanover reiterated that, "In laymen's terms, basically meaning that because of the damage to the second floor, there was so much of the second-floor membrane gone that the first and second floor walls were in danger of coming loose and moving horizontally and collapsing.  (Id).

Turning now to Plaintiff's evidence in light of *Glen*, the Court finds Plaintiffs have produced no evidence challenging the reasonableness of the City of Cleveland's decision that the house presented a danger such that it needed to be destroyed on an emergency basis.  Plaintiffs rely on the following arguments:  the City waited nearly two months from the fire to the

demolition, neither the Fire Report nor the inspector determined the house presented a danger of collapsing; and no demolition order was issued until after a councilman's office contacted the City regarding citizen complaints about the house.

Chief Building Inspector Michael O'Connell testified that he performed the June 26 interior inspection and provided his findings to Vanover who then made the call to demolish. (O'Connell depo. Pg. 23). O'Connell testified that the second floor had collapsed. (O'Connell depo. Pg. 15). He did not inspect the second floor as he considered it too dangerous. A second inspector who accompanied O'Connell did climb the stairs to take photos but O'Connell yelled at him to return to the first floor. (Id at. 82).

Moreover, very recently the Sixth Circuit again upheld summary judgment for the City of Cleveland in a demolition case because the Notice provided and attempts to locate Plaintiff were sufficient for purposes of due process. But also, the Sixth Circuit noted that there was no indication that plaintiff attempted to obtain a permit to begin renovations before the demolition. That appears to be the case here, where Plaintiff never secured a company to make the needed structural repairs in the two months following the fire nor obtained an expert report that the house was not a public danger nor nuisance such that the decision to demolish was unreasonable.

In light of the above, the Court finds there is no competent evidence that creates a genuine issue of fact on the structural danger presented by the home at the time of the demolition decision. The fire report did not report that the house was a collapse danger but that does nothing to challenge the finding by the inspector that the second floor had collapsed when he inspected it. This is supported by clear photographic evidence of the collapsed second floor. The Court finds the collapse was not a small opening but a substantial collapse of a large portion of the second floor. Nor have Plaintiffs offered any evidence that disputes Vanover's conclusion

that given the type of construction of the house such a collapse to the second floor presented a structural emergency as the walls were no longer safely held together by the second floor. Despite Plaintiff's characterization that O'Connell's report did not find the house was a emergent danger, O'Connell testified that was not his decision to make but he did in fact consider the house too dangerous to even safely inspect the second floor. In light of the holding in *Glen* that regardless of whether repairs could be made, a remediation company's estimate does not create an issue of fact on the dangerousness of the house in its present condition. Finally, because the issue of the existence of an emergency condition has not been refuted, again the *Glen* decision states the mere delay in demolishing the structure does not negate the finding of an emergency. Whether there is an actual emergency depends on the facts. Whether to declare an emergency entails a high degree of discretion. *Chalker v. Howland Twp. Trustees,* 74 Ohio Misc. 2d 5, 25, 658 N.E.2d 335, 348 (Com. Pl. 1995). Therefore, the Court finds no genuine issues of fact on the reasonableness of the decision to demolish the house as the house presented an immediate danger.

**Obon**

According to Obon, if the City of Cleveland who retained and instructed Obon to enter the property and demolish it is not found to have violated Plaintiffs' constitutional rights, then Obon must be free of any civil liability for its actions in carrying out the instructions of the City of Cleveland. According to Obon, in *Keene Group, Inc.,* a plaintiff cannot maintain state tort law actions against an independent contractor who acts at the behest of a municipality to abate a public nuisance. However, given the repeated clear statements by the Ohio Supreme Court that "acting without authority or privilege is an element of the trespass tort under Ohio law," here,

15

there was clear instruction by the City of Cleveland to Obon to demolish the property. *Keene Grp., Inc. v. City of Cincinnati*, Ohio, 998 F.3d 306, 318 (6th Cir. 2021).

Plaintiffs further allege state law claims of trespass and conversion against Obon. Both claims are premised on the argument that Obon acted contrary to law and without permission. However, the Sixth Circuit in *Keene* held that state tort law actions cannot be maintained against an independent contractor who acts at the behest of a municipality to abate a public danger. That is exactly what happened here. Now that the Court under current Sixth Circuit and Ohio law has found Plaintiffs failed to produce evidence that the structure was not a danger to the public at the time of the demolition, the Court holds that liability cannot be maintained against Obon regardless of its status as agent or independent contractor as it acted at the behest of the City of Cleveland. Moreover, Haddon admitted she had notice of the condemnation, had left the personal property in the fire ravaged home for two months after the fire and after notice of condemnation.

Under Ohio law, the elements of a claim for conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. *Palmer v. Everson,* No. C-2-08-466, 2008 WL 5109195, at *3 (S.D. Ohio Dec. 1, 2008). Having determined that the City of Cleveland acted within its authority in ordering the demolition of Haddon's house, Plaintiff cannot show that Obon's destruction of the house was a wrongful act, therefore, Plaintiffs' conversion claim fails.

Finally, for these same reasons, Plaintiffs cannot maintain a negligence action against

Obon as its demolition of Haddon's house cannot be shown to have violated a duty owed Plaintiffs but was instead in compliance with the authority of the City of Cleveland to remove a danger to the public.

Therefore, for the foregoing reasons, the Court grants summary judgment for Defendant City of Cleveland and Obon all Plaintiffs' remaining claims.

**IT IS SO ORDERED.**

    /S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge